[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13004

_____

D.C. Docket No. 0:11-cr-60254-WPD-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NASHEBA NECIA HUNTE,
ELMO ANTONIO GEORGE,
a.k.a. Antonio George,
a.k.a. Antonio E. George,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(March 13, 2014)

Before PRYOR, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Nasheba Necia Hunte and Elmo Antonio George appeal their convictions,

following a jury trial, for one count each of conspiracy to defraud the United

States, in violation of 18 U.S.C. § 371, and two counts each of filing false income tax returns, in violation of 26 U.S.C. § 7206(1).  Ms. Hunte also appeals her 51-month sentence.  After reviewing the record and the parties' briefs, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

Because we write for the parties, we assume familiarity with the underlying facts of the case and recite only what is necessary to resolve this appeal.

The evidence presented at trial established that in 2005 Mr. George incorporated Winco Holdings, Inc., a fictitious corporation that conducted no actual business.  Ms. Hunte served as chief executive officer of the corporation, and she registered Winco with the Internal Revenue Services as a Subchapter S corporation.  In April 2005, she opened an account in Winco's name with PayCycle, a provider of online payroll services.  PayCycle facilitated the process of generating and filing tax forms by using the information that was manually entered concerning the salaries of Winco's employees to calculate the tax owed by Winco, and then prompting Ms. Hunte to file the tax forms when due.  Through PayCycle, Ms. Hunte generated and filed three separate types of fraudulent IRS forms, including income tax returns for Winco and forms listing the wages paid to employees and the amount of taxes Winco withheld from those wages.  The IRS

investigation of Winco, however, was unable to uncover any evidence that Winco paid any salaries or withheld taxes on salaries.

Because the defendants elected to structure Winco as an S corporation, the income and losses reported by Winco flowed through to Mr. George and Ms. Hunte. This allowed them to be taxed only once at the individual level.

Mr. George's 2005 personal income tax return reported that Winco paid him $723,077 in wages and showed a loss of $585,431 from Winco. The return further stated that Winco withheld $242,109 in income taxes on Mr. George's behalf, and requested a refund of $229,305, to be deposited into the bank account of another of Mr. George's corporations. The IRS paid out the refund as Mr. George requested and in 2006, Mr. George repeated the process, once again claiming wages and losses attributable to Winco and requesting a refund in the amount of $1,026,644. The IRS did not issue this refund, however, as it had already begun investigating Winco for unpaid taxes.

Ms. Hunte's 2005 and 2006 returns reflected similar false statements relating to wages paid by Winco and losses suffered by the corporation. In her 2005 return, Ms. Hunte requested a refund of $12,502, to be deposited in the same bank account listed by Mr. George in his 2005 return. Instead, however, the IRS sent Ms. Hunte a check for the requested refund, and it was ultimately returned as undeliverable. Ms. Hunte's 2006 return followed the same pattern, and requested a refund of

3

$25,029, which was not paid out due to the IRS investigation of Winco. In the end, of the $1,293,480 in refunds Mr. George and Ms. Hunte fraudulently sought in 2005 and 2006, the IRS paid a total of $229,305.

The IRS investigation of Winco resulted in the indictment of Mr. George and Ms. Hunte on charges of conspiracy to defraud the United States and filing false income tax returns. Following a five-day jury trial, Mr. George and Ms. Hunte were convicted as charged. Mr. George was sentenced to 71 months of imprisonment, and Ms. Hunte received a sentence of 51 months. Both were also ordered to pay $229,305, jointly and severally, in restitution.

## II.    DISCUSSION

On appeal, Ms. Hunte and Mr. George each raise distinct issues. Ms. Hunte contends that (1) the evidence presented at trial was insufficient to support her conviction; (2) her sentence was procedurally unreasonable because the district court improperly calculated the tax loss she was responsible for; (3) the district court erred in finding that (i) she employed "sophisticated means," resulting in a two-level sentencing enhancement pursuant to U.S.S.G. § 2T1.1(b)(2), and (ii) her role in the offense was not minor, resulting in the denial of her request for a two-level downward adjustment pursuant to U.S.S.G. § 3B1.2(b); and (4) her sentence of 51 months was substantively unreasonable. Mr. George argues that he was

4

denied a fair trial in light of the cumulative effect of prosecutorial misconduct. We address each of these issues in turn.

## A. SUFFICIENCY OF THE EVIDENCE

"We review the sufficiency of evidence to support a conviction *de novo*, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007). If a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt, the evidence is sufficient to support a conviction even if the evidence might also support the defendant's theory of innocence. *See United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002). We will not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011).

Ample evidence in the record supports the jury's verdict that Ms. Hunte conspired with Mr. George to defraud the IRS. The evidence at trial established that Ms. Hunte served as the CEO of Winco. She created the PayCycle account through which all of Winco's fraudulent tax filings were generated, and both her original and electronic signatures appear on various false filings. In addition, Ms. Hunte filed income tax returns for both 2005 and 2006 that reflected the false

5

income and losses reported by Winco, which passed through to Ms. Hunte as one of Winco's owners.

Ms. Hunte contends that this evidence was insufficient to support her convictions because the government did not prove that she knowingly committed the offenses charged. She argues that many of the documents admitted into evidence at trial were electronically created and signed, and thus could have been created by anyone, particularly Mr. George, who had access to all of Ms. Hunte's personal information. These contentions, however, fail to take into account the fact that Ms. Hunte's handwritten signature appears on a number of Winco's initial (and false) filings, a fact which Ms. Hunte concedes on appeal.

For example, Ms. Hunte's handwritten signature appears on IRS Form 2553, which registered Winco as an S corporation, thus allowing the income and losses reported by the corporation to pass through to Ms. Hunte and Mr. George. Because Ms. Hunte's 2005 and 2006 tax returns falsely reported Winco's losses and used those loss amounts to offset her reported income, a reasonable jury was entitled to conclude that it was Ms. Hunte who filed the fraudulent tax returns, in part because the filings demonstrated knowledge of the existence of Winco and its status as an S corporation. Ms. Hunte's handwritten signature also appears on the first IRS Form 941 filed by Winco, which included false information concerning the amount of taxes that Winco withheld from its employees' wages. A reasonable

6

jury was entitled to infer from this evidence that Winco's subsequent Form 941 filings, which contained Ms. Hunte's electronic signature, were also filed by Ms. Hunte. Such filings demonstrated Ms. Hunte's knowledge of the scheme and willful participation.

Accordingly, we conclude that the evidence presented at trial was sufficient to support the jury's conclusion that Ms. Hunte knowingly and willfully filed false income tax returns and executed a scheme to defraud the United States. We therefore affirm her convictions.

## B. SENTENCING

Ms. Hunte contends that her sentence is both procedurally and substantively unreasonable. She argues that the district court clearly erred in calculating the amount of tax loss, imposing a two-level enhancement for sophisticated means, and finding that she did not qualify for a two-level downward adjustment for being a minor participant in the offense. She also asserts that her sentence was substantively unreasonable because the district court failed to properly weigh the factors listed under 18 U.S.C. § 3553(a).

"[W]e review the district court's calculation of the amount of [tax] loss for clear error." *United States v. Patti*, 337 F.3d 1317, 1323 (11th Cir. 2003). We also review the district court's findings of fact related to the imposition of sentencing enhancements and a defendant's role in the offense for clear error. *See United*

*States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009) (sentencing enhancements); *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc) (defendant's role in offense). For a district court's factual findings to be clearly erroneous, a reviewing court must be "left with the definite and firm conviction that a mistake has been committed." *Thomas v. Allen*, 607 F.3d 749, 752 (11th Cir. 2010) (quotations omitted). Finally, we review the substantive reasonableness of a sentence under an abuse of discretion standard. *See United States v. Victor*, 719 F.3d 1288, 1291 (11th Cir. 2013).

### i. Tax Loss

When a tax violation results in a tax loss to the government, a defendant's base offense level is determined using the tax table in U.S.S.G. § 2T4.1. *See* U.S.S.G. § 2T1.1(a)(1). Tax loss is defined as "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). In a case like this one, the tax loss is the amount of the claimed refund to which the claimant was not entitled. *See* U.S.S.G. § 2T1.1(c)(4).

Ms. Hunte argues that the district court clearly erred when, for purposes of calculating her sentence, it determined that she was accountable for a loss of $1,293,480. She argues that she should not have been held accountable for the refunds Mr. George requested because the evidence did not show that she filed Mr.

George's false income tax returns or knew the refund amounts requested by Mr. George. We disagree. The Sentencing Guidelines state that, when calculating a tax loss, "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1, cmt. n.2. Furthermore, where the criminal activity is jointly undertaken, the district court may consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(B).

Here, the district court was entitled to find that Ms. Hunte and Mr. George jointly engaged in a scheme to fraudulently obtain tax refunds from the IRS. On their 2005 and 2006 tax returns, Ms. Hunte and Mr. George both reported compensation from Winco and Winco's withholdings from their compensation. In addition, both offset their reported income with Winco's purported losses, claimed refunds based on the amount withheld from their compensation, and requested that the refunds be deposited into the same account, to which both had access. The refunds Mr. George requested were therefore "reasonably foreseeable acts . . . in furtherance of the jointly undertaken criminal activity," and as such, the district

9

court was entitled to consider them "as part of the same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(1)(B); U.S.S.G. § 2T1.1, cmt. n.2. Accordingly, we cannot say that the district court clearly erred in finding Ms. Hunte accountable not only for the refunds sought by her, but those sought by Mr. George as well.

### ii. Sophisticated Means

Ms. Hunte also contends that the district court erred in imposing the "sophisticated means" enhancement in its guidelines calculation. The Sentencing Guidelines prescribe a two-level enhancement where the offense involves sophisticated means. U.S.S.G. § 2T1.1(b)(2). The relevant commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," including "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2T1.1, cmt. n.5.

Ms. Hunte argues that the district court should have looked to the actions taken by her—and not the complexity of the overall scheme—to determine whether sophisticated means were employed. This argument, however, is without merit, as this Court has previously stated that "[i]n evaluating whether a defendant qualifies for the [sophisticated means enhancement], the proper focus is on the

10

offense conduct *as a whole*, not on each individual step." *United States v. Bane*, 720 F.3d 818, 826 (11th Cir. 2013) (emphasis added). *See also United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011) ("Each action by a defendant need not be sophisticated in order to support this enhancement. It is sufficient if the totality of the scheme was sophisticated.").

Here, the district court determined that the sophisticated means enhancement was warranted because the offense involved the creation of multiple fictitious corporations which were used to claim refunds from the IRS that the defendants were not entitled to, and were then used to hide the illegally obtained funds, as well as assets purchased with the funds. The scheme required the incorporation of false entities, the filing of numerous documents with the IRS containing false information to support their requested refunds, and the opening of bank accounts under the names of the false entities. On this record, we discern no clear error in the district court's application of the sophisticated means enhancement.

### iii. Minor Role

Ms. Hunte further argues that the district court erred in denying her request for a two-level downward adjustment for her minor role in the offense. She contends the district court erred in finding that her role in the offense was equal to that of Mr. George. "[A] defendant may receive a two . . . level reduction in her base offense level where her role in the offense can be described as . . . minor."

11

*Rodriguez De Varon*, 175 F.3d at 939.    A defendant bears the burden of establishing her minor role in the offense by a preponderance of the evidence.  *See id.*

"[A] minor role in the offense means any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* (internal quotation marks omitted).    "[T]he district court's ultimate determination of the defendant's role in the offense should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct." *Id.* at 940.

Once again, the record amply supports the district court's finding that Ms. Hunte did not play a minor role in the fraudulent tax return scheme.  Ms. Hunte served as CEO of Winco, she created the PayCycle account that was used to prepare many of Winco's filings with the IRS, and she signed the majority of those filings.  Based on this evidence, the district court was entitled to find that Ms. Hunte's role in the scheme was significant.  In addition, even if this Court were to assume, as Ms. Hunte argues on appeal, that her role in the offense was less significant than that of Mr. George, the district court was nevertheless entitled to find that there were no minor participants in the scheme.  *See id.* at 944 ("The fact that a defendant's role may be less than that of other participants engaged in the

12

relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."). Accordingly, we find that the district court did not err in denying Ms. Hunte's request for a downward adjustment.

### iv. Substantive Reasonableness

Finally, we conclude that Ms. Hunte's 51-month sentence, which is at the bottom of her guidelines range, is substantively reasonable and that the district court did not abuse its discretion in imposing that sentence. "[O]rdinarily[,] we would expect a sentence within the Guidelines range to be reasonable[,]" *United States v. Chavez*, 584 F.3d 1354, 1365 (11th Cir. 2009), and there is nothing in the record before us to indicate that Ms. Hunte's total sentence is unreasonable based on the factors set forth in 18 U.S.C. § 3553(a). The district court determined that Ms. Hunte's behavior was not aberrant, as it continued over a period of time, and the court concluded that a sentence within the guideline range was justified in light of the seriousness of the offense, the need to promote respect for the law, and the need to afford adequate deterrence with respect to offenses involving tax fraud. "[W]e do not substitute our judgment for that of the district court in weighing the relevant sentencing factors absent a clear error of judgment," *United States v. Early*, 686 F.3d 1219, 1223 (11th Cir. 2012), and we do not find any such error in the record before us.

13

## C. PROSECUTORIAL MISCONDUCT

Mr. George contends that during the government's opening and closing arguments, the prosecution made improper statements that prejudicially affected his substantial rights.  Mr. George argues that the prosecutor's remarks constituted emotional appeals designed to inflame the jurors' passions, and included improper "golden rule" arguments that invited the jurors to place themselves in the position of the American taxpayers.  Because the majority of the statements identified by Mr. George were not objected to below, with the exception of two that were objected to on grounds different from those now raised on appeal, we review them for plain error.  *See United States v. Frank*, 599 F.3d 1221, 1238 (11th Cir. 2010) ("If the defendant fails to object to the alleged misconduct below, this Court reviews for plain error."); *United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995) ("To preserve an issue for appeal, . . . an objection on other grounds will not suffice.").

Plain error requires an error that is plain or obvious, and that affects the defendant's substantial rights.  *See Frank*, 599 F.3d at 1238. Once these requirements are met, "an appellate court must then determine whether the forfeited error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings before it may exercise its discretion to correct the error." *Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (internal quotation marks

14

omitted). In the case of prosecutorial misconduct, a new trial is required only where the remarks made by the prosecutor were improper and prejudiced the defendant's substantive rights. *See Frank*, 599 F.3d at 1237. "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *Id.* at 1237-38. "Thus, even when error occurs, the defendant's substantial rights are not affected if the evidence sufficiently established his guilt." *Id.* at 1238.

Mr. George's prosecutorial misconduct claim on appeal is one of cumulative error. He contends the cumulative effect of the various improper remarks made by the prosecution throughout its opening and closing arguments served to deny him a fair trial. "Even where individual judicial errors or prosecutorial misconduct may not be sufficient to warrant reversal alone, we may consider the cumulative effects of errors to determine if the defendant has been denied a fair trial." *United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir. 2011) (quoting *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009)). "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997).

Of the various remarks Mr. George challenges, we find that three in particular were improper. During its closing argument and final summation, the

prosecution made the following remarks: (1) that the defendants "were stealing from you and they were stealing from me and everyone else that's paying into the system"; (2) that the defendants were "living large off of your tax dollars"; and (3) that without citizens filing accurate tax returns, "we would have no tax revenue, . . . no way to build schools . . . no way to fight wars." There is no doubt that these "golden rule" remarks were improper, as they directly suggested that the jurors had personal stakes in the outcome of the case and they placed the prosecution together with the jury in a joint effort to combat fraud. *See United States v. McGarity*, 669 F.3d 1218, 1246 (11th Cir. 2012) ("[B]y telling the jury that the victims of the child pornography are 'our daughters and granddaughters, neighbors, friends,' the prosecutor here crossed the line . . . 'demarcating permissible oratorical flourish from impermissible comment.'"). *See also United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009) ("Improper suggestions, insinuations and assertions calculated to mislead or inflame the jury's passions are forbidden in the presentation of closing arguments."). We expect prosecutors from the Tax Division of the Department of Justice to refrain from this kind of argument in the future.

Nonetheless, as in *McGarity*, 669 F.3d at 1246-47, the improper remarks did not so prejudicially affect Mr. George's rights that a different outcome might have been achieved in their absence. First, the district court instructed the jury on at

16

least three separate occasions that the arguments of counsel were not evidence. *See United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985) (holding issuance of three curative instructions was sufficient to cure damage arising from prejudicial comments made by prosecutor). Second, there was overwhelming evidence against Mr. George. The improper remarks did not affect Mr. George's substantial rights, even when considered cumulatively. *See Ladson*, 643 F.3d at 1342 ("There is no cumulative error where the defendant cannot establish that the combined errors affected his substantial rights.") (internal quotation marks omitted). As a result, the prosecution's improper statements do not require reversal.

## III.    CONCLUSION

Based on the foregoing, we affirm the convictions of Ms. Hunte and Mr. George, and Ms. Hunte's sentence.

**AFFIRMED.**